Let's hear oral argument on our final case this morning. People v. Foreman. My name is Sharon Shanahan and I represent the people of the state of Illinois. The defendant was charged with unlawful possession of a weapon by a felon. Counsel for the defendant filed a motion to suppress, which the trial court granted, which brings us here. As the was reasonable suspicion to briefly detain the defendant, and two, that the reasonable suspicion standard was the correct standard. Now I want to make very clear that my next words are a direct quote from the defendant's brief. The defendant, quote, elects not to contest, close quote, the state's argument that the reasonable suspicion standard is the correct standard. I read this as a concession that the defendant says that the wrong standard was applied, that the correct standard is the reasonable suspicion standard. Therefore I'll be dealing just with issue one in my brief. It's extraordinarily important that the trial court apply the wrong standard here. The trial court used probable cause rather than the far less onerous Terry standard. Probable cause requires a belief that the suspect committed a crime, whereas the Terry standard requires suspicion, reasonable suspicion, but nonetheless suspicion. As our Supreme Court said in Terry, reasonable suspicion is facts which taken together lead an officer to reasonably to conclude in light of his experience that criminal activity may be afoot and that the defendant might be involved. Because the trial court reviewed the evidence under the wrong standard and applied a more onerous standard than it should have, this court can have no confidence in the trial court's order and we simply do not know what the trial court would have ruled if she had applied the appropriate standard. Now there are three factors which should be considered together to establish the reasonable suspicion in this case. And the reason I emphasize that word together is that it doesn't appear that the trial court considered them together, and certainly the defendant's brief does not consider them together. But the trial court cannot consider evidence in isolation in determining reasonable suspicion. That's People v. Baskin-Spears that's cited in the state's brief. Now the defendant's basic behavior by itself wouldn't have established reasonable suspicion. I can't say that being in the high crime area alone would establish reasonable suspicion. Even maybe the sound of the gun hitting the floor alone wouldn't establish reasonable suspicion. But that's not what we're doing here. We're looking at those three factors together. And this series of acts, as Terry says, this series of acts, each of them perhaps innocent in itself warrants further investigation. Now the first thing is that this was a high crime area. Detective Bellevue was an expert in the distribution and sales of drugs. He was the director of a special unit called WAVE, Working Against Violent Elements, which was established to deal with the violence in the metro east area. He testified that WAVE targets area, many of the gas stations and convenience stores, like the mobile station in question, that have lots of open air drug sales and lots of firearm violations. When which had the same objectives. That was project safe neighborhoods. And Bellevue testified that the mobile station in question was a hot spot. It's hard to imagine more persuasive testimony to establish that an area is a high crime area. I would also note that under the Harris factors that the state discussed in its reply brief, there is no question that this goes further to establish that this was a high crime area. Second, let's look at what Terry calls nervous evasive behavior. Now I think most of us can say that we recognize unmarked police cars. I mean I can say I've been coming up interstate 57 and I see the turn around fart or the crown vent. I don't care who it is, I take my foot off the gas. I presume that's an unmarked police car. Here we have an unmarked police car that pulls up towards the gas station. It has police officers in marked vests inside it. As soon as they pull up, the defendant gestures to his cohort, goes into the store. As he's doing this, he makes eye contact with a police officer who's in a vest. He's looking over his shoulder, he's walking quickly through the store and he goes into the bathroom. He increased his pace as he walked away from the defendant and I think these things together can be considered evasive action. Now the defendant says, well, he walked into a store and you wouldn't want to walk into a store if you were trying to evade a police officer. Well, Detective Crowley specifically testified to that particular fact. He noted that if you were wanted on a warrant or something like that, then you'd be getting out of there. You would be leaving. But if you had drugs or a gun and you wanted to get rid of that evidence, you would go into the store where you could hide it somewhere and somewhere like a bathroom. Certainly with respect to drugs, going into a bathroom to flush them down the toilet would be the perfect way to do that. Now, the trial court said there had to be headlong flight. She said that Illinois, I'm quoting here, Illinois courts have consistently distinguished cases where there's not headlong flight. That's simply wrong on the law. Certainly there are cases, the cases the defendant cites in his answer brief, that say, oh, it has to be headlong flight. But there are other cases, some cited in the state's brief, that do not require headlong flight. The Austin case required a quick two steps, coupled with some other facts. In the interest of F.R., he walks out to the car, he sees the police officer, he walks away. That was enough. They did not require, there's no idea that you have to run away. So the trial court, and this is important, the trial court was wrong on the law there. You cannot say that it is the law that Illinois courts consistently require headlong flights. Some do, some don't. The defendant also wants mere certainty as to the police officer's testimony. He says there's no evidence that the defendant heard the police officer say that he was policed, that the defendant knew the announcement was made, that the police officer didn't have personal knowledge that the defendant's pace was not his normal walking pace, that he didn't have personal knowledge that walking into the store was an attempt to distance himself from the police. Well, personal knowledge is not required. As Wardlow says, the police do not have empirical studies about suspicious behavior, and they cannot be made to come up with scientific certainty to do this when none exists. And here I'm quoting from Wardlow, thus the determination of reasonable suspicion must be based on common sense judgments and inferences about human behavior. Moving on to the third factor is the sound of the gun. Officer Crawley testified that the sound of a gun being dropped on a tile floor is a distinct sound. He says it's a unique sound. He does his best to describe it, but you know what? If something's a unique sound, it's very hard to describe. He does his best, and he says a metal plank. But he has extensive experience and training in this area, and he's heard this sound many times. And relying on his training and experience, he said that he thought that this was the sound of a gun being dropped on a tile floor. Now again, this is reasonable suspicion. In a United States Supreme Court case, the court says in deciding whether reasonable suspicion exists, a law enforcement officer may rely on training and experience to draw inferences and make deductions that may well elude the untrained person. Thank you, counsel. You'll have a chance for rebuttal. Argument for the appellee. Good afternoon, Your Honors. May it please the Court, counsel. Let me try to unpack the State's argument here. The State began by arguing that the wrong standard was applied by the court below. Well, first of all, I should respectfully remind the Court that this Court may affirm on any basis that it's supported by the record. But in particular, I want to call this Court's attention to the fact that while the Court below did apply the wrong standard as its first rationale in saying that probable cause was not met, in its third rationale, speaking directly to the point about Officer Crawley's testimony about his incredible ability to detect the sound of a firearm hitting a tile, the Court said, and I'm quoting from its opinion, his conclusion that it was a handgun hitting the floor cannot be relied upon by this Court as supplying either reasonable suspicion or probable cause. Counsel, let me ask you, do you think that paragraph 8 in the Court's order, in the findings section that you just referred to, is the Court saying that Officer Crawley is not credible as to that point? I think that's absolutely what its finding was. I think that's clearly implied there. It may be implied, but it's not stated. If that was the Court's conclusion, I sure wish the Court would have clearly stated, I don't find the Officer's testimony credible as to that point, but instead uses the verbiage that's used, cannot be relied upon by the Court as a reasonable suspicion nor probable cause. Well, the point of that, however, Your Honor, is that it didn't rise to that level of not even supplying reasonable suspicion. I understand, yeah, it might have been better making a factual finding here, but I think that we can clearly infer that, as well as from the testimony itself. It was inherently incredible. Now, can I just, can we back up? I have to get to Fact Street. We have a quick shop, and we have a men's bathroom. I assume it's got men or whatever. Right. And it's a small one? It's a mobile gas station that has one of those convenience stores. Okay, so it's got probably a wastebasket. Did they testify anything about there was a one-hole, you know, a lock the door one deal? The door was locked, whether, so I'm assuming it's probably one of those small bathrooms. So it's a one bathroom. Correct. And there was a clink. They testified there was a sound of, he said a sound of a gun. Could be a clinking sound, something metal. Could have been, say, an adjustable wrench or something like that, heavy wrench. Could have been a belt buckle, anything. Well, a belt buckle wouldn't make a big sound like he was describing, would it? He just said metallic clank. Okay, a metallic clank. So he went in there and he found a belt buckle. No, he went in there and found a gun. Now, was it on the floor? I think he testified it was on the floor, didn't he? I think, yeah, I think he said it was, yeah. Okay, so if he heard a metal sound, it definitely wasn't the garbage can or the wastebasket or nothing fell off the wall or anything or the stool was made out of porcelain, I guess. It wasn't a seat going down. It wasn't a flushing sound. So the only thing in the restroom was something on the floor. Well, if he heard a sound, how was that sound made? Did somebody in there drop something? Your Honor, no, we're not arguing that it might have been some other object, in fact. But he'd already made the determination. That he heard a gun. Well, when he went in, he saw a gun, right? Or he could not go in and get the gun? Correct, correct. But at the point in time where he detains Mr. Foreman. Is before he did? Was before he went into the restroom and discovered the gun. Okay, that's okay. So he had to have based it just on the sound. Okay, so then he goes in the restroom and he finds a weapon. Right, after the Terry stuff had already commenced. Okay, so you're saying it was a good guess? Well, apparently it was a good guess. Right, but there was nobody else was in there in between that time. Right. He was the only one. It was small. That was the only thing found in there. Correct. Okay, now I just want to get the facts straight. Yeah, yeah, I understand, Your Honor. But the point I would have to emphasize is that in applying what the standard for Terry was that it has to be based just on the sound, not what he discovered after the Terry stuff. Okay. And in that regard, I would submit that it is inherently incredible. I don't care how long this officer had been in the military. He said, well, he heard a lot of guns hitting the ground, which implies outdoors. I know of no military service to conduct drills where they drop handguns onto a tile surface and use that as the basis for the expertise that I can distinguish this. Counsel said, well, you know, the third factor is the sound of the gun hitting the floor. That's begging the question. You only conclude the sound of the gun hitting the floor if you conclude that there was some merit to this so-called expert testimony based on his experience that he can tell the sound. You know, there was no testimony that they had conducted drills where they dropped different handguns from different distances on tile floors. So I think the court was well within its rights to determine we're not going to credit this. It doesn't even reach the level of reasonable suspicion. The state also argues here today that we ignored in our brief that as well as the whole combination of circumstances, it's not just the sound of the metallic clank, whatever it was. My answer to that is that zero plus zero plus zero still equals zero. None of these standards for reasonable suspicion were met here. We hear about the nervous and invasive behavior. All we really have is two people, one of whom was defendant, walking quickly into the convenience store and he goes into the restroom. There was a lot of conclusory statements made by both officers. Well, he recognized us as police cars and he signaled the other person. How do they know that? An officer probably said, well, he made some sort of motion that signaled the person presumed to be his associate. Never described what the motion was. Officer Belliveau said that he somehow ordered the other gentleman. What does that mean? Somehow how? There was a complete failure to provide any evidence with respect to that. With respect to the hot spot or the high crime area, counsel states, well, it's hard to imagine more persuasive testimony that this was a hot spot. Well, I can certainly imagine it. How about applying the standards from the Harris case, one of which is temporal proximity between evidence of heightened crime activity and the data to stop research at issue? That was not satisfied in this case. What the state sentence reply gave, well, there was temporal proximity because this project, Safe Neighborhoods, was in effect since 2013, so it was established as a hot spot. This occurred July 31st, 2014. Where's the temporal proximity? This is not a case like F.R., Ingray F.R., cited by the state where the officer testified we observed criminal activity 25 times within a six-month period. We don't have that here. It's not just an officer stating, well, this is a hot spot. It's evidence establishing temporal proximity of the heightened crime and the data to stop research at issue. This was plainly that there was no evidence here. We're just supposed to accept the officer's word. Once a hot spot, always a hot spot. That's not what Harris demands. That doesn't meet the third prong of Harris. There's also the first prong of Harris is a nexus between the type of crime most prevalent and the type of crime suspected in the case. Walking quickly to a men's room is we're supposed to assume just based on that because when you strip away all the conclusory statements of the officers, that's really all you have left is two guys, one of them, but they both walk quickly into the gas station, and one of them heads to the men's room. I would suggest that if that's enough to establish reasonable suspicion, then any time anyone gets off the wrong exit and has to go to the bathroom in a hurry that they're going to be in a lot of trouble. That does not comport with the requirements of reasonable suspicion, or I might add basic principles of living in a free society. So clearly you don't have the required evidence to establish this was a hot spot. You don't have real nervous and evasive behavior. I read there was the testimony by Crawley that while in his experience it's common for criminals to flee into a store to hide and conceal drugs or guns, that was his testimony, but number one, the trial court didn't have to believe that testimony considering that Crawley had already established reasons to suspect his credibility on other fronts. And secondly, unless police know this person, you know, has previously been involved in criminal activity, you cannot possibly look at the rapid movement into a convenience store as rising to the level of reasonable suspicion. There was also the point about the author of Crawley announcing state police, and then the guy appeared to look over his shoulder a couple of times. Well, a couple of things about that. First of all, he just said state police from 30 yards away. Thank you, counsel. I'll arrest that. Thank you, Your Honor. We'd ask that this court affirm. I'll rebut. Justice Schwarm, I'd like to address your question about the trial court's order. Thank you. I'd like for you to. I was going to ask you if you didn't. She said it cannot be relied upon. That's a far cry from saying that it's not credible. The state quotes in its brief, People v. Mendez, due weight must be given to the specific reasonable inferences that the officer is trying to draw from the facts in light of his experience. You can't just say no. You should say no. I agree. This is a poorly worded order. In fact, that's all she says when she gets this is can't be relied upon. I also think it's important to point out the fact that, and I can't directly quote counsel for the defendant, but he said something about that this paragraph was the third basis for denying this, and therefore she was relying on reasonable suspicion. This is kind of a confusing order because first she says it's not reasonable suspicion, it's probable cause, and then she doesn't even mention, I mean, not a word about the high primary. She says that you have to have flight for it to be applicable. And then she just moves into another paragraph where she says the officer is not credible. This is not another basis for her decision because if it is the basis for her reasonable suspicion, her rejection of reasonable suspicion, then she's totally ignored the evidence that it was a high primary. And her conclusion that this is a, that Illinois courts do not consider this unless it's headlong flight, she's just wrong on the law there. Counsel, let me ask you this. If it's a factual, well, it is a factual finding. It's a finding that she's made in that paragraph eight. And let's say we conclude that she found the officer's testimony not to be credible on that issue. And looking at the other factors that you're talking about here, are the other factors enough for reasonable suspicion without hearing that metal clank and a gun on the tile floor? Wardlow says they are. Wardlow says that headlong flight and being in a hot spot is enough. I think it's a minimal amount. I mean, I think you need that at a bare minimum. But I think there is nothing in this order that appears that this trial court gave any credence to the hot spot, gave any credence to the officer's experience in training and saying, I've considered this. I rejected it despite his experience in training. I just think that it indicates that she gave no evidence, I mean, no consideration to it whatsoever. And so what we've got here is basically a defendant who admits that the trial court applied the wrong standard. He says that the trial court's, and I'm quoting defendant's brief, 13th trial court's decision to completely discount Crowley's testimony about the sound of the gun is quote, debatable. So even there, the defendant's saying, well, maybe she wasn't quite right on that. We've got erroneous, he erroneously argues that there was insufficient evidence that this was a hot spot. And the trial court was wrong on the law that Illinois courts have consistently required headlong flights. If a trial court should have given some weight to Crowley's testimony and did not, and if she did not even mention the high end crime area, and if the trial court misstated the law regarding headlong flight, and if the trial court used probable cause instead of reasonable suspicion, that's pretty unreasonable and that's pretty arbitrary. And that's the standard the state has to meet. Thank you counsel. All right. Court will be in recess.